# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN E. HAWKINS, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| THE WAYNESBURG COLLEGE, | ) | Civil Action No. 07-5 |
| Defendant/Third-Party Plaintiff, | ) | Judge Flowers Conti<br>Magistrate Judge Caiazza |
| v. | ) | |
| EMERSON ELECTRIC COMPANY, *et al.*, | ) | |
| Third-Party Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Third-Party Defendants' Motions to Dismiss (*see* Docs. 30, 33, 38) be granted in part and denied in part, as described below.

### II. REPORT

**BACKGROUND**

The Plaintiff Steven E. Hawkins filed this negligence action against the Waynesburg College ("Waynesburg" or "the College") based on injuries he sustained when his shirt sleeve was pulled into a compound meter saw provided by the College ("the Saw"), causing partial amputation of his left upper appendage. *See generally* Opinion & Order dated Jul. 20, 2007 (Doc. 17) at 1-2.

Mr. Hawkins alleges Waynesburg was negligent in failing to adequately train and supervise him in using the Saw, and by failing to provide adequate warnings regarding the potential dangers of misuse. *Id.* at 2.

On July 20, 2007, the undersigned granted Waynesburg's request to join as third-party defendants the Saw manufacturer(s) and other entities in the chain of distribution ("the Manufacturers") for contribution/indemnity under the product liability failure-to-warn theory. The request was occasioned by the Plaintiff expert's opinion that the warning label affixed to the Saw was inadequate, leading Mr. Hawkins to assert Waynesburg was liable under the Restatement (Second) of Torts Section 392 for the negligent supply of chattel for a business purpose. *See generally id.* at 2-3. Among other things, the court allowed the joinder because: "[i]t is neither uncommon nor inappropriate for potential joint-tortfeasors to be brought into suit by way of a third-party complaint"; "the Plaintiff's theory that Waynesburg is liable for the [M]anufacturer[s'] insufficient warning label begs a claim of contribution"; and "[i]f Waynesburg somehow is liable for not remedying the ineffective label, by all means it should be permitted to pursue a derivative claim against the provider thereof." *See id.* at 6, 9 n.6.

The Manufacturers have since been joined, Waynesburg has asserted claims of contribution/indemnity,[1] and the Plaintiff has amended his pleadings to assert direct claims against the Manufacturers based on the failure to warn.

Now ripe for adjudication are the Manufacturers' Motions to Dismiss portions of the Third-Party Complaint and the Plaintiff's Second Amended Complaint.

**ANALYSIS**

    **1.   Certain of the Issues Addressed in the Current Motions Are Moot.**

The Manufacturers have filed two Motions to Dismiss regarding the Third-Party Complaint (*see* Docs. 30 & 33), the only difference between them being that the second seeks dismissal of the claims against Sears Holdings Corporation and KCD IP, LLC because they did not design, manufacture, distribute, or maintain the Saw. *See* 3d P. Defs.' Br. (Doc. 34) at 9-10. These entities recently were dismissed with prejudice by stipulation of the parties, *see* Doc. 52, so the request for dismissal is moot to this extent. The same is true of the Manufacturers' Motion to

---

[1] In seeking dismissal of Waynesburg's claim for indemnity, the Manufacturers argue that the court restricted its grant of leave to file third-party claims to ones for contribution. *See* 3d P. Defs.' Br. (Doc. 31) at 4-5. The undersigned's Opinion referenced both contribution and indemnity, however, and the decision did not purport to analyze the difference between, or viability of, the two theories. *See, e.g.*, July 20th Opinion at 6 ("third party liability is typically predicated upon a theory of contribution or indemnity") (citation omitted).

Dismiss the direct claims against these companies in the Plaintiff's Second Amended Complaint. *See generally* 3d P. Defs.' Br. (Doc. 39) at 6-7.

Also moot are the requests for dismissal of the Third-Party Complaint to the extent Waynesburg: (a) alleges the Manufacturers are "solely or directly liable to the Plaintiff"; (b) claims third-party liability beyond the failure-to-warn theory; and (c) seeks indemnity and liability over to Waynesburg regarding the Plaintiff's claims for punitive damages and attorney's fees. *See generally* 3d P. Defs.' Br. (Doc. 31) 3-4. Waynesburg has stipulated that its pleadings do not allege items (a) and (b),[2] and the District Court should hold the College bound to its stipulations. As for item (c), the Plaintiff's Second Amended Complaint "withdraw[s]" his request for punitive damages and attorney's fees, *see* Doc. 37 at ¶ 1, and the District Court should deem this a voluntary dismissal with prejudice of said claims. Accordingly, the Manufacturers' Motions to Dismiss should be denied as moot in these regards.

    **2.    The Plaintiff's Direct Claims Against the Manufacturers Are Time-Barred.**

As counsel explains, the Plaintiff's claims are governed by Pennsylvania's two-year statute of limitations. *See* 3d P. Defs.' Br. (Doc. 39) at 3. Given that Mr. Hawkins' accident occurred on

---

[2] *See id.* at 3 *and* n.2 (citing attached letter of stipulation).

February 23, 2005, the statute ran on February 23, 2007. *See generally* Compl. (Doc. 1) at ¶ 6 (confirming date of accident). The Plaintiff first brought claims against the Manufacturers on September 11, 2007, well outside the limitations period. *See generally* 2d Am. Compl. (Doc. 37).

For the purposes of stating claims against a new party, the "relation back" doctrine is governed by Federal Rule 15(c). An amendment naming a new party will relate back to the original complaint only if:

> (a) the claim in the amended pleading arises out of the conduct, transaction, or occurrence set forth in the original pleading;
>
> (b) within 120 days of institution of the action, the party brought in by amendment has received "such notice of the . . . action that the party will not be prejudiced in maintaining a defense on the merits"; and
>
> (c) within 120 days of institution of the action, the party must have known or should have known that, "but for a mistake concerning the identity of the proper party," the action would have been brought against that party.

<u>Arthur v. Maersk, Inc.</u>, 434 F.3d 196, 207 (3d Cir. 2006) (citations and some internal quotations omitted).

Here, the 120-day period expired on May 3, 2007, and the Plaintiff's claims against the Manufacturers were first asserted on September 11, 2007. There is no evidence that these entities had actual or constructive knowledge of the Plaintiff's potential claims; nor is there any indication the Manufacturers

-5-

"had adequate notice of the action and should have known" they would be joined but for a mistake "based on lack of knowledge or mere misnomer." *Id.* at 209 (citations omitted). Rather, the Plaintiff's expert inspected the Saw in April 2005 and described it as "a Sears Craftsman Compound Miter Saw, Model No. 113.234610 (Serial No. 8934110882)." *See* 3d P. Defs.' Br. (Doc. 39) at 5 n.4 (citing record evidence).

This is not a case where the Plaintiff failed to timely assert claims against the Manufacturers based on a "lack of knowledge or mere misnomer." The Plaintiff simply did not pursue his potential claims, and they are now time-barred.[3]

### 3. The Manufacturers Have Not Shown Their Entitlement to Dismissal of the Third-Party Claims for Indemnity.

The Manufacturers assert Pennsylvania law "rejects the notion that a party can be held liable in negligence for failing to warn another of an alleged danger in a product that was not designed or manufactured by the party." *See* 3d P. Defs.' Br. at 6-7. The centerpiece of their argument is the decision in Wenrick v. Schloemann-Siemag Aktiengesellschaft, 564 A.2d 1244 (Pa. 1989).

---

[3] In response, the Plaintiff does not take issue with any of these conclusions. *See* Pl.'s Opp'n Br. (Doc. 43) at 5-6. To the extent he relies on the law of the case doctrine, the undersigned's July 20th decision merely noted it may have been in the Plaintiff's best interests to assert direct claims against the Manufacturers, *see id.* at 10 n.7; the court stated no opinion regarding the timeliness of his claims. *See* Order (Doc. 55) filed contemporaneously herewith (rejecting similar "law of the case" argument).

In Wenrick, the Pennsylvania Supreme Court held that the supplier/designer of an electrical control system for an extrusion press could not be held liable in negligence for failing to warn of the dangers presented by the user's placement of an unguarded switch in an area where it could be inadvertently triggered. *Id.* at 1247-48. The Court found no evidence that the supplier was asked to, or accepted, the responsibility for inspecting the user's configuration of the equipment. *Id.* at 1248. Under the circumstances, the Court held:

> Before a person may be subject to liability for failing to act in a given situation, it must be established that the person has a duty to act; if no care is due, it is meaningless to assert that a person failed to act with due care. <u>Certain relations between parties may give rise to such a duty</u>. Although each person may be said to have a relationship with the world at large that creates a duty to act where his own conduct places others in peril, <u>Anglo-American common law has for centuries accepted the fundamental premise that mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act</u>.

*Id.* (emphasis added).

This passage aptly summarizes the longstanding principle in tort that, absent a legally imposed duty, there is no obligation to prevent harm. It is distinguishable from the Plaintiff's Section 392 theory, however, because that Section <u>does</u> rely upon

-7-

a "relation[ship] between parties" "giv[ing] rise" to a heightened standard of care: the duty to pursue one's business interests in a safe and reasonable manner. *See* Rest. 2d of Torts § 392, cmt. a ("[t]he additional duty of inspection thrown upon the person . . . supplying chattels" for use in business, "as compared with the absence of any such duty when he has no business interest . . ., is analogous to the duty of inspection imposed upon one who permits another to come upon his land for his business purpose"); *cf. also* Rest. 2d of Torts § 343, cmt. a (given business owner's potential "financial[] benefi[t]," visitor is entitled to expect owner "will take reasonable care to discover the actual condition of the premises and either make them safe or warn . . . of dangerous conditions"). Wenrick is distinguishable in a most fundamental respect, and it offers no guidance regarding the viability of the Plaintiff's Section 392 claim or, in turn, Waynesburg's request for indemnification.

Otherwise, the parties find themselves no closer to a definitive answer regarding whether the duty to protect persons from unsafe chattels extends to remediating allegedly insufficient warning labels. The court's independent research, however, has identified decisions allowing somewhat analogous claims to coexist with products liability allegations. *See, e.g.*, Wilkinson v. Shackelford, 478 F.3d 957, 963-64 (8th Cir. 2007) (driver could bring negligence claim against car owner

under Rest. 2d of Torts § 388 for failing to inspect used tires, along with products liability claim against tire manufacturer); Drum v. Shaull Equip. & Supply Co., 760 A.2d 5, 8, 14-15 (Pa. Super. 2000) (plaintiff could bring claim against forklift manufacturer not only for products liability, but also for its negligent supply of chattel under Section 392); Erickson v. U-Haul Int'l, Inc., 738 N.W.2d 453, 460-63 (Neb. 2007) (plaintiff could allege negligence against truck lessor under Section 388, despite her failure to assert claims against manufacturer; "we see no reason to limit [tort claims] to manufacturers only," and "other suppliers of chattels should be held liable for their negligent failure to warn of dangerous propensities of a chattel") (citation and internal quotations omitted).

These things being said, the court still has some lingering doubt regarding the Plaintiff's attempts to impose liability against Waynesburg for the Manufacturers' allegedly deficient warning label.  Regardless, neither Waynesburg nor the Manufacturers have demonstrated the Plaintiff's inability to so proceed.  The court notes, moreover, that the decisions most directly calling into question the Plaintiff's theory have relied on a lack of evidence establishing the supplier had better reason to know of the products' dangerous propensity. *See, e.g.*, Ziglar v. E. I. Du Pont De Nemours & Co., 280 S.E.2d 510, 513-14 (N.C. App. 1981) (granting summary judgment because "[the] plaintiff

did not present any specific facts . . . tend[ing] to show that the [supplier] knew or should have known that the manufacturer's written warnings . . . were inadequate to warn others"); Muscat v. Khalil, 388 N.W.2d 267, 271, 273 (Mich. App. 1986) (rejecting analogous chattel claim, in part, because "[t]here [wa]s no reason to assume that [the purchaser] should have been any more aware of the absence of instructions on the ladder than [the] plaintiff"); *see also, e.g.*, Ritchie v. Glidden Co., 242 F.3d 713, 726-27 (7th Cir. 2001) (in action alleging strict liability against manufacturer and negligent provision of chattel against supplier, summary judgment was inappropriate because plaintiff "ha[d] put forth sufficient evidence demonstrating [the supplier's] knowledge of the dangers inherent in the use of" product in question). Whether Waynesburg possessed superior knowledge is an issue better suited for summary judgment, and the Manufacturers' (and Waynesburg's) arguments fail under Rule 12(b)(6).[4]

Last is the question of whether, assuming the jury finds Waynesburg negligent in failing to remediate the Saw's allegedly insufficient warning label, the College may recover in indemnity

---

[4] Discovery should bring the Plaintiff's claims into greater focus. If, for example, there is no evidence Waynesburg had reason to know or believe that the Manufacturers' warning label was deficient, the College may argue persuasively that it is entitled to summary judgment. *See generally* Ziglar, Muscat, Ritchie. On the other hand, should the Plaintiff establish that Waynesburg had concerns regarding the warning label or that similar accidents occurred or almost had, his failure to remedy theory would gain significant weight.

rather than contribution.  Although Manufacturers' counsel appear to suggest not,[5] the court reaches the opposite conclusion.

As Waynesburg correctly observes:

> [In] common law[,] there [are] two types of liability [that can] be imposed. . . . [P]rimary liability . . . is imposed on a party who is directly negligent. . . . Conversely, secondary liability rests upon a fault that is imputed . . ., <u>arising from some positive rule of</u> . . . <u>law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible</u>. . . .
>
> The [distinction] . . . depends on a difference in the character or kind of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. Secondary liability exists, for example, . . . when a pedestrian is injured by falling in a hole in the pavement of a street; in such a case the abutting property owner is primarily liable because of his failure to maintain the pavement in proper condition, but the municipality is secondarily liable because of its having neglected to perform its duty of policing the streets and seeing to it that the property owners keep them in repair . . . .

---

[5] In claiming contribution is the only remedy, the Manufacturers cite <u>Rabatin v. Columbus Lines, Inc.</u>, 790 F.2d 22 (3d Cir. 1986) and <u>Chamberlain v. Carborundum Co.</u>, 485 F.2d 31 (3d Cir. 1973). *See* 3d P. Defs.' Br. at 5.  These decisions held only that, where joint tortfeasors cause a single indivisible harm, they are entitled to contribution from one another for a pro rata share of the total damages. *See* <u>Rabatin</u>, 790 F.2d at 25-26; <u>Chamberlain</u>, 485 F.2d at 34. To the extent the opinions discussed indemnity, they did not address Waynesburg's theory that secondary tortfeasors may pursue indemnity claims against the actor primarily responsible for the plaintiff's harm.  *See* discussion immediately *infra* in text.

> [I]f . . . the injured person chooses to
> bring suit against the municipality <u>the
> latter can recover indemnity from the
> property owner for the damages</u> . . . <u>it has
> been called upon to pay</u>.

<u>Walker v. Eleby</u>, 842 A.2d 389, 391 (Pa. 2004) (citations and internal quotations omitted, emphasis added).

Similarly, Pennsylvania courts have invoked Sections 93(1) and 95 of the Restatement of Restitution to find indemnification appropriate:

> Section 93(1) . . . states that a right of
> indemnification is created . . . [w]here a
> person has supplied to another a chattel
> which[,] because of the supplier's negligence
> or other fault[,] is dangerously defective
> . . . and both have become liable . . . to a
> third person injured by its use. . . .
>
> Section 95 . . . provides for restitution
> . . . of liability for harm caused to a third
> person because of . . . [the] negligent
> failure to make safe a dangerous condition of
> . . . chattels . . . created by . . . [the]
> misconduct . . . of the party from whom
> indemnification is sought.

<u>Automatic Time & Control Co., Inc. v. ifm Electronics, GmBh</u>, 600 A.2d 220, 222 (Pa. Super. 1991) (citations and internal quotations omitted).

Here, Waynesburg claims entitlement to indemnification because its liability for failing to remedy the warning label is secondary to the Manufacturers'. Consistent with <u>Walker</u>, the College's liability if any flows from "some positive rule of

-12-

law," *i.e.*, Section 392, and it relates to "a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one[s] primarily responsible," *i.e.*, the Manufacturers.

Waynesburg's indemnification claims fall squarely within the primary versus secondary liability distinction recognized in Pennsylvania, and the Manufacturers are not entitled to dismissal under Rule 12(b)(6).

**CONCLUSION**

For all of the reasons stated above, the Manufacturers' Motions to Dismiss should be granted in part and denied in part, as described above.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by December 17, 2007. Responses to objections are due by December 27, 2007.

November 30, 2007

Francis X. Caiazza
U.S. Magistrate Judge

cc (via email):

Cindy Stine, Esq.
Howard M. Louik, Esq.
Dennis R. Very, Esq.
Pamela V. Collis, Esq.
Paul J. Walsh, III, Esq.
Thomas J. Madigan, Esq.
John Edward Wall, Esq.
Anthony J. Rash, Esq.