# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN E. HAWKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE WAYNESBURG COLLEGE, | ) | Civil Action No. 07-5 |
| | ) | |
| Defendant/Third- | ) | Judge Flowers Conti |
| Party Plaintiff, | ) | Magistrate Judge Caiazza |
| | ) | |
| v. | ) | |
| | ) | |
| EMERSON ELECTRIC COMPANY, | ) | |
| *et al.*, | ) | |
| | ) | |
| Third-Party | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Third-Party Defendants' Motion for Summary Judgment (Doc. 62) be granted, the Defendant's Motion for Summary Judgment (Doc. 70) be granted in part and denied in part, and the Plaintiff's Motion for Summary Judgment (Doc. 68) be denied.

### II. REPORT

**BACKGROUND**

The Plaintiff Steven E. Hawkins has filed this negligence action against the Waynesburg College ("Waynesburg" or "the College") based on injuries he sustained when his shirt sleeve was pulled into a compound meter saw provided by the

College ("the Saw"), causing partial amputation of his left upper appendage. *See generally* R&R dated Nov. 30, 2007 (Doc. 54) at 1. Among other things, Mr. Hawkins alleges Waynesburg was negligent in failing to adequately train and supervise him in using the Saw, and by failing to provide adequate warnings regarding the potential dangers of misuse. *Id.* at 2; *see also id.* (noting Plaintiff's claim College was liable for manufacturer's allegedly inadequate warning label under Restatement (2d) of Torts § 392 ("Section 392"), addressing negligent supply of chattel for business purposes).

Waynesburg has joined as Third-Party Defendants the manufacturer and retailer of the Saw ("the Manufacturers") claiming that, to the extent the College is liable to Mr. Hawkins for the allegedly deficient warning label, they are liable to it under the theories of contribution/indemnity. *See generally id.* at 2.

All of the parties have requested summary judgment, and their Motions are ripe for adjudication.

**ANALYSIS**

    **A.    The Plaintiff Cannot Establish the Saw's Warning Label Was the Proximate Cause of His Injuries**.

Mr. Hawkins did not observe the Saw's warning label prior to the accident. *See* Pl.'s Opp'n Br. (Doc. 78) at 8; Pl.'s Expert Rpt. dated Feb. 21, 2007 (filed under Doc. 73-5) at 3.

It follows that, rather than challenging the content of warnings he never read, the Plaintiff contends the label was insufficiently conspicuous. His expert has opined:

> The warning label . . . was ineffective by virtue of its location on the [S]aw and the lack of contrast with the [S]aw arm where it was positioned. The black label was affixed to the dark gray surface of the [S]aw arm, facing away from the operator. . . . For the label to be effective, it should have been posted on the [S]aw using a color and location to make it readily visible to the user.

*See* Pl.'s Expert Rpt. at 6-7; Pl.'s Opp'n Br. at 7.

In Pennsylvania and elsewhere, courts have recognized a warning label may be inadequate if it is not sufficiently conspicuous to provide reasonable notice of danger. *See, e.g.*, Pavlik v. Lane Ltd./Tobacco Exporters Int'l, 135 F.3d 876, 886-87 (3d Cir. 1998) ("the victim's actual failure to read a warning label does not necessarily bar recovery where the plaintiff is challenging the adequacy of the efforts of the manufacturer to communicate the dangers . . . precisely because they [we]re not presented in a manner sufficient to attract the user's attention") (applying Pennsylvania law, citations and internal quotations omitted). Under this theory, a plaintiff challenges not the content of the warning label, but the label's placement, the size or readability of its typeface, or other factors affecting the degree of conspicuousness. *See id.; see also*

Stanley Indus., Inc. v. W.M. Barr & Co., Inc., 784 F. Supp. 1570, 1575 (S.D. Fla. 1992) ("a plaintiff who does not read an allegedly inadequate warning cannot maintain a negligent-failure-to-adequately warn action unless the nature of the alleged inadequacy is such that it prevents him from reading it") (citation omitted).

These standards must be read in conjunction with Pennsylvania law dictating that the failure to warn a user regarding dangers of which he already was aware precludes a showing of proximate cause. *See, e.g.*, Sherk v. Daisy-Heddon, 450 A.2d 615, 618-19 (Pa. 1982) (affirming entry of judgment in favor of air rifle manufacturer because owner testified, among other things, he had instructed his son "not to point the gun at anyone"; owner's son pointed gun at victim's head and killed him, and father's knowledge and admonitions "precluded a finding that the allegedly inadequate warnings" proximately caused victim's death); Conti v. Ford Motor Co., 743 F.2d 195, 197-98 (3d Cir. 1984) (applying Pennsylvania law and holding district court erred in submitting failure-to-warn claim to jury; although plaintiffs argued manufacturer should have placed "reminder" warning in car's interior regarding use of clutch, victim testified he "knew that in driving a standard transmission you would have to depress the clutch") (internal quotations omitted).

Turning to the instant case, and in light of the undisputed fact that Mr. Hawkins' extended shirt sleeve was pulled into the sawblade, two warnings on the label were potentially relevant: the instruction to "[r]ead and [u]nderstand the [o]wner's [m]anual before using" the Saw and to "[k]eep hands out of [the] sawblade path." *See* photo of warning label (filed under Doc. 65-3).[1]

Given the obviousness of the warning not to put one's hands in a spinning sawblade,[2] the instruction to read the owner's manual is most germane. This is so because the manual repeatedly advised not to operate the Saw while wearing extended shirt sleeves. *See* Owner's Manual (filed under Doc. 72-3) at 2 ("[r]oll long sleeves above the elbow"); *id.* at 4 ("[t]o avoid being suddenly pulled into the blade," "[r]oll long sleeves above the elbow"); *id.* at 17 (issuing same warning and providing illustration for proper use, in which model figure has long sleeves rolled to elbow).

---

[1] The other warnings were: "[w]ear safety goggles"; "[t]ighten arbor screw and all clamps before sawing"; "[k]eep guards in place and working properly"; "[n]ever cut anything 'free hand'"; "[n]ever reach behind or beneath the sawblade"; "[w]ait for blade to stop before moving workpiece, servicing or adjusting tool"; and "[t]o avoid electrical shock[,] do not expose to rain." *Id.* The Plaintiff has neither suggested nor shown that his noncompliance with the additional warnings was a proximate cause of his injuries. *See* Pl.'s Expert Rpt. dated Feb. 21, 2007; Pl. Expert's Supp. Rpt. dated Jan. 18, 2008 (filed under Doc. 73-6).

[2] *See* Pl.'s Opp'n Br. at 3 ("[t]here are certain dangers that common experience tells us need to be avoided," including one's "plac[ing his] hand[] in the direct path of a spinning blade," and "there is not a shred of evidence that [Mr.] Hawkins knowingly" did so).

-5-

Unfortunately for the Plaintiff, he has admitted knowledge and understanding of the operative warnings. As noted above, Mr. Hawkins was aware of the obvious risks associated with placing his hand in the path of a moving sawblade. *See* Pl.'s Dep. Tr. (filed under Doc. 65-5) at 25, 130 (admitting same). This warning also was far less relevant given the circumstances leading to his injury, *i.e.*, his shirt sleeve having been pulled into the sawblade.

As for the need to review the owner's manual, Mr. Hawkins has testified not only that he knew to read it, but that he sought to do so before the accident:

> Q. Did you ask anybody if there was a user manual around?
>
> A. Yes. . . .
>
> Q. Who did you ask?
>
> A. I asked the student . . . [the professor] put me with . . . .
>
> . . . .
>
> Q. [W]hat was his response?
>
> A. [H]e stuttered and said I do not know where that's located or I have no idea.
>
> Q. Why did you ask for the owner's manual?
>
> A. Because this [was] the first time I had [seen] this piece of equipment and I just wasn't very familiar.

```
Q.   You wanted to look at the owner's manual to
     see how to properly operate the [S]aw?

A.   Yes, sir.

Q.   And how to safely operate the [S]aw?

A.   Yes, sir.
```

Pl.'s Dep. Tr. at 22-23, 133-34.

As in <u>Sherk</u> and <u>Conti</u>, the Plaintiff's testimony confirms the conclusion that, had he observed the warnings his expert claims were inconspicuous, they would have told him nothing he did not already know. And though Mr. Hawkins may take issue with the College's failure to supply the manual, he cannot deny knowledge regarding the importance of reviewing it.

With the Plaintiff's admissions went his ability to show the warning label was the proximate cause of his injuries. *See* discussion *supra*; *see also generally* <u>Hawley v. Delaware & Hudson Ry. Co.</u>, 514 F. Supp.2d 650, 657 (M.D. Pa. 2007) (recognizing that, like any other negligence theory, Section 392 requires showing of proximate cause) (citations omitted).

Plaintiff's counsel nevertheless argues that, had Mr. Hawkins seen the warning label, it may have reinforced his understanding of the importance of reviewing the manual. *See* Pl.'s Opp'n Br. at 8. When there is no evidence that additional "reminders" would have "made a difference," however, "mere speculation" will not suffice. *See, e.g.*, <u>Conti</u>, 743 F.2d

at 198-99.  Any suggestion the warning label would have reminded or reinforced the Plaintiff's awareness here is particularly tenuous, given his request to review the manual shortly before the accident.  *See* discussion *supra*.

Last are the Plaintiff's modest forays into the sufficiency of the warning label's content.  Counsel's reluctance to place great reliance on this theory is understandable, given: (a) the logical inconsistency between Mr. Hawkins' testimony he did not observe the warning label and his challenging the substance of the unread language; (b) the Plaintiff's tacit admission the label "[could ]not disclose all the additional warnings contained in the [m]anual," *see* Pl.'s Opp'n Br. at 8; and (c) the Plaintiff expert's testimony that the design and placement of the label was defective, not its content, the latter of which was consistent with industry standards.  *See* Dep. Tr. of Pl.'s Expert (filed under Doc. 82-2) at 148-49.[3]  Even were the court to indulge this inquiry, the undersigned respectfully submits that considering the content of the unread warning label proves too much for the purposes of proximate causation.

---

[3] In his July 2007 deposition, the Plaintiff's expert made clear that he questioned only the conspicuousness of the Manufacturers' warning label.  *See id.* at 146-49.  In a later deposition, the expert indicated he "[did not] find particular fault with the content of the label," but believed "additional warnings" could have been incorporated.  *Id.* at 149.  Given the expert's testimony on the whole, his opinions are incapable of establishing causation based on the content of the label.  *See* <u>Al Hamilton Contracting Co. v. D.E.R.</u>, 659 A.2d 31, 37 (Pa. Commw. 1995) ("[t]o prove causation, an expert witness must testify with 'reasonable certainty' that in his . . . professional opinion the result in question [came] from the cause alleged") (citations omitted).

Under the circumstances presented in this case, the Plaintiff's most straightforward theory would be that the Saw was defective because, (a) the warning label was insufficiently conspicuous, and (b) the label should have included an express admonition that the user not allow long sleeves to be in proximity with the path of the sawblade. This scenario presents not one, but two, "what ifs": what if the label plate was a more distinguishable color and affixed where the user was more likely to observe it; and, assuming this was the case, what if the label included a warning regarding appropriate attire, as did the manual the Plaintiff knew he should read?

In the undersigned's view, the demand for a second assumptive predicate proves too much to maintain the causal chain. As referenced above, nearly all of the courts to have endorsed the inconspicuousness theory have assumed that the label, if read, may have prevented the accident. None of the cases involved facts where, as here, the Plaintiff was aware of the label's material information and, for other reasons, he could not or did not heed the advice. If such an approach were endorsed, the proximate causation inquiry would veer into the realm of mere speculation, and Mr. Hawkins' unawareness of the warning label should preclude an inquiry into its content. *Cf., e.g.*, <u>Reynolds v. General Motors Corp.</u>, 2007 WL 2908564, *11 (N.D. Ga. Sept. 28, 2007) (where injured did not read warnings

provided by manufacturer, "as a matter of law . . . the content of the warnings was not the proximate cause of [her] injuries"); Kane v. R.D. Werner Co., Inc., 657 N.E.2d 37, 39 (Ill. App. 1995) (holding same) (citation omitted).[4]

For all of the reasons stated above, the Plaintiff has failed as a matter of law to demonstrate the Saw's warning label proximately caused his injury. The College's Motion for Summary Judgment therefore should be granted to this extent, *see* Def.'s Br. (Doc. 71) at 23-30 (arguing same), and this ruling renders moot its other argument regarding Section 392. *See id.* at 19-23.[5]

---

[4] Arguably, some tension exists between the court's reviewing the warning label to confirm Mr. Hawkins' awareness of its instructions, but discrediting the Plaintiff's potential challenges regarding the thoroughness of the label's content. The fact remains, however, that the Plaintiff's own expert has relied on conspicuousness rather than content, and counsel otherwise has failed to present competent evidence challenging the latter. Even were this not the case, the key issue is proximate causation and, to the extent "fairness" is a consideration, it counsels not in favor of allowing plaintiffs the maximum potential theories for recovery, but rather guides the court in "draw[ing] judicial lines beyond which liability [can]not [reasonably] be extended." *See generally* Port Authority of New York & New Jersey v. Arcadian Corp., 189 F.3d 305, 317 (3d Cir. 1999) (citations omitted).

[5] If the District Court adopts the undersigned's recommendation regarding proximate causation, that decision should be construed as the "law of the case." *See generally* Huber v. Taylor, 519 F. Supp.2d 542, 560 (W.D. Pa. 2007) (under said doctrine, "when a court decides upon a rule of law, that decision . . . continue[s] to govern the same issues in subsequent stages [of] the same case") (citations and internal quotations omitted). Consequently, Waynesburg should not be heard at trial to argue the Saw's warning label, or Mr. Hawkins' failure to observe it, was a proximate cause of his injuries. In light of the College's vigorous arguments on summary judgment, moreover, its taking a contrary position may also implicate the doctrine of judicial estoppel. *See generally* Whiting v. Krassner,

Given that the Manufacturers' potential third-party liability for contribution/indemnity is restricted to the warning label theory, summary judgment in their favor also is appropriate.

**B.    Waynesburg's Remaining Arguments for Summary Judgment**

    1.    The College's Assertion It Owed No *in Loco Parentis* Duty to Mr. Hawkins

Waynesburg cites a number of cases recognizing that colleges do not stand *in loco parentis* to their students. *See* Def.'s Br. at 9-14. This is unsurprising. College students are quite unlike minor children, who are mandated by the States to attend public schools (or a substantial private equivalent), and whose parents by necessity tender their supervisory responsibilities for approximately seven hours during each school day.

College students <u>elect</u> to pursue matriculation, exchanging monetary compensation in the form of tuition for the pursuit of a degree that hopefully will enrich their understanding of the world around them, not to mention create employment opportunities that otherwise may prove unavailable.

In essence, universities and colleges pursue the joint missions of providing higher education opportunities for the good

---

391 F.3d 540, 543-44 (3d Cir. 2004) (judicial estoppel "preserve[s] the integrity of the judicial system by preventing parties from . . . assuming inconsistent positions") (citations and internal quotations omitted).

-11-

of the community at large and meeting funding/operational sustenance objectives. It seems quite doubtful that Mr. Hawkins would have been invited into the College's work shop were he not a student fulfilling requirements for his "Introduction to Theatre" class. *See generally* Pl.'s Am. Compl. (Doc. 7) at ¶¶ 6-7. It also is abundantly reasonable to presume that the Plaintiff had, or would be, paying tuition to attend this and other classes. If anything, his status as a tuition-paying college student placed Mr. Hawkins closer to the role of a "business-invitee" than a "man on the street," to which a duty of reasonable care nevertheless may have flowed.

Although these considerations may inform the District Court's deliberations, they are unnecessary to the denial of summary judgment in connection with the *in loco parentis* theory. The law has long been clear that colleges may be liable to their students under ordinary negligence principles. *See* Doe v. Yale Univ., 748 A.2d 834, 847 & n.17 (Conn. 2000) (stating, "the common-law duty not to cause physical injury by negligent conduct" "does not disappear when the negligent conduct [happens to] occur[] in an educational setting," and citing string of cases where college/university students were permitted to bring negligence claims against providers of higher education); Fay v. Thiel Coll., 2001 WL 1910037, 55 Pa. D. & C.4th 353, 362-63 (Pa. Comm. Pl. Dec. 31, 2001) (acknowledging that, despite lack

of *in loco parentis* relationship, "a college can owe a particular student a special duty as a result of [their] relationship," especially where institution is charged with its "own allegedly negligent acts -- not for the allegedly negligent acts of [its] students") (citations omitted); *see also generally, e.g.*, Liberty v. Geneva Coll., 690 A.2d 1243, 1243-44 (Pa. Super. 1997) (affirming entry of judgment on jury verdict in case where student alleged negligence against college for injuries sustained during bowling class).

Waynesburg's argument for summary judgment is without merit, and its Motion should be denied.[6]

---

[6] The District Court also should reject the College's disclaimer of potential liability based on: (1) the Plaintiff's ability fulfill his theater class requirement through different means, *e.g.*, ushering, painting, wardrobe, lighting, or acting, see Def.'s Br. at 12-13; and (2) his purported experience with power tools given his family's involvement in the construction industry. *See id.* at 13-14. As to the first point, Mr. Hawkins was fulfilling a class requirement by performing a function indisputably endorsed by the College. Had the Plaintiff chosen to work in lighting, for example, and the College's failure to act with reasonable care in training him and supervising his use of lighting equipment resulted in injury, Waynesburg would be no less susceptible to a negligence claim under those circumstances. Somewhat relatedly, any duty of care owed by the College in connection with its work shop had nothing to do with whether Mr. Hawkins, as opposed to some other student, was completing the required tasks.

As to the second point, Mr. Hawkins' purported prior experience with power tools, at best, may impact whether an owed duty was breached; it does not defeat the existence of any duty as a matter of law. This aside, the College's argument ignores material questions of fact regarding whether the Plaintiff indeed had or claimed prior experience with power tools. *Compare* Def.'s Statement of Facts (Doc. 72) at ¶ 6 (Plaintiff told professor he worked with power saws in past) *with* Pl.'s Response (Doc. 75) (citing Plaintiff's deposition testimony to contrary).

2.  The College's Assertion the Plaintiff Assumed the Risk

Except under circumstances not presented here, "the doctrine of assumption of the risk, with its attendant complexities and difficulties, . . . has been supplanted" by the Pennsylvania legislature's "adoption of a system of recovery based on comparative fault." Nissley v. Candytown Motorcycle Club, Inc., 913 A.2d 887, 892 n.2 (Pa. Super. 2006) (citing and quoting Hughes v. Seven Springs Farm, Inc., 762 A.2d 339 (2000)); *see also id.* (relying on Hughes despite subsequent Pennsylvania Supreme Court ruling that unrelated portions of Comparative Negligence Act were unconstitutional); Romeo v. Pittsburgh Assocs., 787 A.2d 1027, 1032 (Pa. Super. 2001) ("[w]ith a few minor exceptions, the assumption of risk doctrine has . . . been abolished in Pennsylvania") (citation omitted).  Waynesburg has failed to show the instant case falls within any of the existing exceptions, and its request for summary judgment is unfounded. *Cf., e.g.*, Nissley at 892 n.2 (discussing continued viability of theory in specific cases, such as those involving downhill skiing and attending baseball games).

Even if the assumption of the risk doctrine remains viable, Waynesburg's own formulation requires it to show "reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in [it to] his injury."  *See* Def.'s Br. at 15

-14-

(quoting plurality opinion in Howell v. Clyde, 620 A.2d 1107, 1113 (Pa. 1993)).  As recognized in Staub v. Toy Factory, Inc., another decision relied upon by the Defendant, *see* Def.'s Br. at 15, "a plaintiff will not be precluded from recovering except where it is beyond question that he voluntarily and knowingly proceeded in the face of an obvious and dangerous condition and thereby must be viewed as relieving the defendant of responsibility for his injuries." *Id*, 749 A.2d 522, 526 (Pa. Super. 2000) (citation to quoted source omitted, emphasis in original).

This is not one of those cases.  That Mr. Hawkins selected shop work to complete his lab requirement, as opposed to presumably "safer" alternatives, did not relieve the College of its duty of reasonable care regarding any of the choices available.  *Cf.* Def.'s Br. at 16.  Nor did his using the Saw, as opposed to presumably safer equipment.  *Cf. id.* at 16-17 (suggesting Plaintiff could have worked with hammer or screw driver).

The College requested, and likely needed, some students to perform tasks requiring the operation of power tools.  Given Waynesburg's plain endorsement of this activity, the court cannot now say, as a matter of law, that Mr. Hawkins "deliberately and with the awareness of specific risks" subjected himself to "an obvious and dangerous condition," thereby relieving the Defendant

of any duty.  *See* discussions *supra*.  To the contrary, a jury could very reasonably conclude that Waynesburg owed an obligation to adequately train and supervise its students in performing the obligations the College itself required.  The fact finder likewise could reasonably conclude that, before sending off its students to perform work with dangerous machinery, Waynesburg should have required the students to review (rather than, as Mr. Hawkins alleges, make unavailable to them) the instruction manuals provided for its equipment.  *Cf.* Def.'s Br. at 17-19 (suggesting Plaintiff assumed risk by using Saw despite his claimed inability to review manual).

This is a classic negligence case, and the assumption of the risk doctrine cannot properly be invoked to take the Plaintiff's claims away from the jury.  The Defendant's argument for summary judgment is without merit.

> **C.   The Plaintiff's Motion for Summary Judgment on Liability**
>
> 1.   The College's "Withholding" of the Owners Manual

Among other things, Section 392 requires suppliers of business chattels "to exercise reasonable care to make the chattel safe for the use for which it is supplied."  *See id.* at § 392(a).  The Plaintiff posits the novel theory that, because the owner's manual "was necessary to make the [S]aw safe," the College's failure to make it readily available constitutes a

violation of the Restatement Section.  *See* Pl.'s Br. (Doc. 69) at 9.

Unsurprisingly, counsel has failed to identify law indicating that the failure to provide an owner's manual is a *per se* violation of Section 392.  *Cf. generally* <u>Commerce Bank/Pa. v. First Union Nat'l Bank</u>, 911 A.2d 133, 142 (Pa. Super. 2006) ("[t]he concept of negligence *per se* establishes both duty and the required breach of duty where an individual violates an applicable <u>statute, ordinance or regulation</u> designed to prevent a public harm") (citation and internal quotations omitted, emphasis added).  Whether viewed under the "*per se*" or "no reasonable juror" standards, however, the Plaintiff still must establish proximate cause.  *See id.* (proximate cause required for negligence *per se*); *see also* discussion *supra* (Section 392 requires showing of proximate cause).

The court cannot say as a matter of law that the College's failure to make the owner's manual more apparent or accessible was the sole, proximate cause of Mr. Hawkins' injuries. As referenced above, material disputes of fact remain regarding the Plaintiff's actual or claimed experience in using electric saws and other power tools.  *See* Def.'s Opp'n Br. (Doc. 80) at 11-13 (citing and quoting record evidence).  Should the jury credit the Defendant's evidence, it may conclude the Plaintiff knew or should have known not to operate the Saw with his shirt

sleeves down.  *Cf.* discussion *supra* (proximate cause lacking where Plaintiff was aware of risk he later claims he should have been warned against).  And while the College has introduced no evidence directly refuting Mr. Hawkins' claimed lack of knowledge, it is hard to imagine circumstances under which such evidence could, as a practical matter, be adduced.  Rather, a jury should be permitted to determine whether Mr. Hawkins' testimony is credible given the disputed evidence regarding his experience.

Perhaps more convincingly, the College should remain free to argue to a jury that Mr. Hawkins was negligent in electing to operate the Saw despite his stated inability to secure the owner's manual.

Personal beliefs regarding the parties' potential acts or omissions notwithstanding, the undersigned is not prepared to say that no reasonable jury could assign some or all of the fault to Mr. Hawkins.  Only the fact finder can determine the proximate cause(s) of the Plaintiff's injuries, and summary judgment is inappropriate.

### 2. The Absence of the Saw's Miter Lock Handle

As stated in the Defendant's brief, questions of fact remain regarding whether the Saw's miter lock was missing on the day of the accident.  *See* Def.'s Opp'n Br. at 15 (citing record evidence).  Far more importantly, there is no evidence to

establish as a matter of law that the absence of the component part was a proximate cause of Mr. Hawkins' injury.  *See id.* at 17-21 (noting Plaintiff expert's original report did not opine absent miter lock proximately caused accident, and his later contrary opinion was equivocal at best).

Summary judgment cannot be granted on this basis.[7]

**CONCLUSION**

For all of the reasons stated above, summary judgment should be granted in favor of the College and the Manufacturers regarding the Plaintiff's warning label-based claims.  Given that this theory forms the only basis for liability against the Third-Party Defendants, those entities should be released from this case.  Otherwise, the parties' requests for summary judgment should be denied.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by July 3, 2008.

---

[7] The final section of the Plaintiff's brief cites general negligence principles, suggests that the College owed "an especially high [duty] of care," and rehashes his other arguments for summary judgment. *See* Pl.'s Br. at 11-13.  Nothing in the section modifies the conclusion that this case does not rise to the "no reasonable juror" standards relied upon by counsel.

-19-

Responses to objections are due by July 14, 2008.

June 17, 2008                                  *[signature]*
                                               Francis X. Caiazza
                                               U.S. Magistrate Judge

cc (via email):

Cindy Stine, Esq.
Howard M. Louik, Esq.
Pamela V. Collis, Esq.
Paul J. Walsh, III, Esq.
John Edward Wall, Esq.
Anthony J. Rash, Esq.